UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOCK JON DAVID L.,[1] | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 4:19-CV-02142 |
| ANDREW SAUL,[2] | § § | |
| Commissioner of Social Security, | § § | |
| *Defendant.* | § § § | |

## MEMORANDUM AND ORDER

Plaintiff Dock John David L. filed this suit seeking judicial review of the denial of disability insurance benefits under Title II of the Social Security Act ("the Act"). ECF No. 1. The Parties consented to have this Court conduct all proceedings in this matter pursuant to 28 U.S.C. § 636(c) and filed cross-motions for summary judgment. ECF Nos. 8, 10. Having reviewed the motions, the record, and the applicable law, the Court determines that Plaintiff's motion should be denied, and Defendant's motion should be granted.

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] Andrew Saul has been automatically substituted for the previously named defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and the last sentence of 42 U.S.C. § 405(g).

# I.    BACKGROUND

Plaintiff is a 55-year-old man with a high school education who has completed specialized training in industrial electronics. R. 170, 204.[3] Plaintiff worked his entire career as a Performance Engineer in the telecommunications industry. R. 204. Plaintiff has not returned to work since May 22, 2015, due to his conditions. R. 170, 203.

Plaintiff claims he suffers from both physical and mental impairments. R. 72–78. Plaintiff has undergone multiple treatments and surgeries for chronic abdominal pain, rotator cuff repair, elbow tendon release, and shoulder arthroscopy. R. 342–50, 392, 415, 517–49. Plaintiff additionally claims he suffers from severe pain, stress, insomnia, and anxiety due to his impairments. R. 67–80, 211–22, 482–89.

On February 9, 2016, Plaintiff filed his application for disability insurance benefits under Title II of the Act. R. 170–76, 203. Plaintiff based his application on "GI Problems," colitis, gastroparesis, shoulder problems, forearm issues / fine motor skills, extreme pain, brain tumor, hearing loss, ringing in ears, extreme insomnia, staph infection—recurrent, and shigella. R. 68, 203.[4] The Commissioner denied his

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 3.

[4] The relevant time period is May 22, 2015—Plaintiff's alleged onset date—through December 31, 2019—Plaintiff's last insured date. R. 13. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

claims. R. 101–05. Plaintiff requested reconsideration, and the Commissioner again

denied his claims. R. 82–96.

Pursuant to Plaintiff's request, a hearing was held before an Administrative

Law Judge ("ALJ"). R. 26–66. An attorney represented Plaintiff at the hearing.

R. 28. Plaintiff and a vocational expert testified at the hearing. R. 27. The ALJ issued

a decision denying Plaintiff's request for benefits. R. 8–25.[5] Plaintiff requested that

---

[5] An ALJ must follow a five-step analysis in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a) (40). The ALJ determined Plaintiff was not disabled at step five. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, and had not engaged in substantial gainful activity from his alleged onset date of May 22, 2015, through his date last insured of December 31, 2019. (20 C.F.R. 404.1571 *et seq.*). R. 13. At step two, the ALJ found that Plaintiff has the following severe impairments: inflammatory bowel disease, degenerative arthritis of the right shoulder, anxiety, depression, and somatoform disorder (20 C.F.R. § 404.1520(c)). R. 13. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). R. 13. The ALJ found that Plaintiff has the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. R. 15. The ALJ found he could occasionally balance, stoop, kneel, crouch, and crawl. R. 15. He could also occasionally reach overhead, and frequently reach in all other directions, with his right upper extremity. R. 15. In addition, the ALJ found Plaintiff could remember and follow simple, but not detailed instructions. R. 15. Plaintiff could perform the tasks assigned, but not always at a production rate pace; however, he could meet the end of day work goals. R. 15. He could have occasional contact with co-workers, supervisors, and the general public. R. 15. Plaintiff could occasionally adapt to rapid changes in the workplace. R. 15. At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work pursuant to 20 C.F.R. § 404.1565. R. 19. Before step five, the ALJ noted that Plaintiff, who was 49 years old at the time of the alleged disability onset date, would change age category from "younger individual age 18-49" to "closely approaching advanced age" (20 C.F.R. § 404.1563). R. 19. At step five, the ALJ found that considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (20 C.F.R. §§ 404.1569 and 404.1569(a)). R. 19. Specifically, the ALJ found that Plaintiff could perform the jobs of shipping weigher, mail clerk, and office helper based on the testimony of the vocational expert. R. 20. The ALJ concluded that Plaintiff had not been under a disability as defined in the Social Security Act from May 22, 2015, through the date of the ALJ's decision (20 C.F.R. § 404.1520(g)). R. 20.

the Appeals Council review the ALJ's decision, but the Appeals Council denied his request for review. R. 1–5.

Plaintiff filed this civil action. ECF No. 1. In this appeal, Plaintiff challenges the ALJ's step two and step five analysis. Pl.'s MSJ and Brief, ECF No. 8. Defendant opposes Plaintiff's motion, arguing that the ALJ's substantial evidence supports the ALJ's step two and step five findings. Def.'s MSJ Brief, ECF No. 10.

## II.     STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id*.

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestekl*, 139 S. Ct. at 1154.

"The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Thornhill v. Colvin*, No. 14-CV-335, 2015 WL 232844, at *3 (N.D. Tex. Jan. 16, 2015) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only if no credible

evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir. 1988)).

## III.  ANALYSIS

Plaintiff asserts that the ALJ erred in two ways in finding him not disabled. ECF No. 8. First, Plaintiff argues that the ALJ did not consider all the evidence at step two. *Id.* at 5–19. Second, Plaintiff claims that the ALJ did not include every limitation in the hypothetical questions at step five. *Id*. at 19–22. In response, Defendant counters that substantial evidence supported the ALJ's findings. ECF No. 10.

### A. The ALJ Did Not Err At Step Two.

Plaintiff contends that the ALJ erred at step two because she did not consider his bilateral shoulder impingement, his left shoulder, arthritis in his right wrist and hand, fatigue, and work-related mental impairments. ECF No. 8 at 5-19. Defendant responds that the ALJ properly considered all of the evidence, and the ALJ omitted the listed impairments because they were not "severe." ECF No. 10 at 6–8.

#### 1.  *Plaintiff bears the burden of proving his impairments are severe.*

A claimant bears the burden of proving that he suffers from a disability.  *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "The claimant bears the burden

of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy." *Id.* Once the Commissioner makes that showing, the burden shifts back to the claimant to rebut the finding. *Id.* (affirming ALJ's decision when claimant failed to meet burden before the fifth step of the inquiry).

The mere presence of an impairment is not enough to establish that one is suffering from a disability. *Anthony v. Sullivan*, 854 F.2d 289, 293 (5th Cir. 1992) (explaining claimant must show that his impairments affect ability to work). Rather, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Perez*, 415 F.3d at 461 (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000)). Under the statute, an impairment must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Furthermore, an individual is "under a disability, only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." *Id.* § 423(d)(2)(A).

"At step two of the disability analysis, the ALJ considers whether the claimant has a medically determinable impairment or combination of impairments that is severe." *Foster*, 2011 WL 5509475, at \*11 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). "A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* (citing § 404.1520(c)). An impairment is "not severe" only if it does not impose any interference on the ability to perform work activities. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).[6] Therefore, the step-two showing requires Plaintiff to make only a "*de minimis* showing." *Salmond*, 892 F.2d at 817 (citing *Anthony*, 954 F.2d 293 n.5).[7]

### 2. *Plaintiff failed to make even a de minimis showing that his bilateral shoulder impingement was a severe impairment.*

Plaintiff asserts that ALJ erred in failing to consider and evaluate his bilateral shoulder impingement syndrome as a severe impairment. ECF No. 8 at 7. Plaintiff claims the ALJ cherry-picked the evidence, neglected to mention Dr. Shah's

---

[6] In the Fifth Circuit, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Salmond v. Berryhill*, 892 F.2d 812, 817 (5th Cir. 2018) (citing *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added by *Salmond* court)). "Restated an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Id*.

[7] Moreover, the ALJ's failure to make a severity finding at step two is not a basis for remand where the AJL proceeded to later steps of the five-step analysis. *Herrera v. Comm'r*, 406 Fed. App'x 899, 903 (5th Cir. 2010) (per curiam) (collecting cases); *see Foster,* 2011 WL 5509475, at \*14-19 (analyzing when remand is appropriate for step two error in severity finding).

diagnosis, and misconstrued or failed to mention key findings in Dr. Mikkilineni's[8]

record. *Id.* at 8. Plaintiff's contentions are without merit.

For years, Plaintiff complained of shoulder pain both before and after surgery.
In 2013, Plaintiff complained of severe shoulder pain in both his right and left
shoulders following surgery for a rotator cuff repair of his right shoulder. R. 551,
554. Plaintiff reported that the pain persisted, his range of motion was decreased,
and it was not progressing with physical therapy. R. 551. Dr. Shah performed a
second surgery on Plaintiff's right shoulder to confirm that the rotator cuff was
healing properly and to release adhesions/scar tissue. R. 551. During this procedure,
Dr. Shah diagnosed Plaintiff with bilateral shoulder impingement syndrome in
addition to acromioclavicular joint arthritis.[9] R. 550–56.

After that diagnosis, Plaintiff continued to complain of shoulder pain and

---

[8] Dr. Mikkilneni, a consultative physician, examined Plaintiff in 2016, a year after the onset. R. 17.

[9] Bilateral Shoulder Impingement Syndrome is an "inflammation of the tendons of the rotator cuff." *Ladnier v. REC Marine Logistics, L.L.C.*, No. 14-1278, 2015 WL3824382, at *6 (E.D. La. Jun. 19, 2015). Shoulder impingement occurs when the top outer edge of your shoulder blade rubs against or pinches your rotator cuff beneath it, causing pain and irritation. https://my.clevelandclinic.org/health/diseases/7079-shoulder-impingement-syndrome, last visited 6/28/21.

The acromioclavicular joint ("AC joint") is located at the top of the shoulder where the collarbone and the highest part of the shoulder blade meet. There is cartilage between the two bones in the joint, which is a white tissue between bones that allows the bones to move on each other. Arthritis is a condition characterized by loss of cartilage in the joint from wear and tear of the cartilage that allows the bones to move smoothly. https://www.hopkinsmedicine.org/health/conditions-and-diseases/ac-joint-problems, last visited 6/28/21.

limited movement.[10] However, despite this diagnosis and Plaintiff's years of complaints, there are no other medical records confirming this diagnosis or treatment for this impairment.

The lone reference appears in Dr. Mikkilineni's record, noting the bilateral impingement syndrome based on Plaintiff's self-reporting. R. 493. Plaintiff cites to this examination as evidence of his bilateral shoulder impingement. ECF No. 8 at 7–9 (referencing R. 491–93). However, a physician's documentation of symptoms when it comes from claimant's self-reported history as opposed to direct observation may be disregarded. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Contrary to Plaintiff's argument, the ALJ thoroughly considered Dr. Mikkilineni's evaluation. R. 17. As the ALJ noted, Dr. Mikkilineni observed that Plaintiff's shoulder movements were painful, but not restricted, and the X-ray of the right shoulder showed mild degenerative arthritis in the right shoulder joint. R. 17 (citing R. 490–94). The ALJ is required to determine the credibility of medical

---

[10] *See, e.g,*. R. 550–53, 554–56 (On 11/15/13, 12/23/13, Dr. Shah documenting Plaintiff's persistent shoulder pain following rotator cuff repair). R. 385 (On 1/3/14, documenting pain following shoulder surgery); R. 490–504 (On 4/14/16, complaining of shoulder and forearm pain); R. 517–20 (On 3/28/14, Dr. Shah noting Plaintiff experienced some pain following rotator cuff repair, left shoulder arthroscopy, and right shoulder arthroscopy).

R. 211–22 (Plaintiff's Social Security application describes limited function due to continuous shoulder pain); R. 16 (Plaintiff's Social Security function report describes how he continues to have pain in his shoulder which makes getting dressed and daily grooming more difficult); R. 220 (Plaintiff's Functional Report describes how his shoulder pain affects his ability to lift things and reach overhead); R. 490–504 (In 2016, Plaintiff complained to Dr. Mikkilneni of experiencing shoulder pain and forearm pain.).

experts and weigh their opinions based on his review of the record as a whole. *Greenspan*, 38 F.3d at 237. The ALJ found Dr. Mikkilineni's opinion to be consistent with the record. R. 17. Substantial evidence supports the ALJ's determination. *Salmond*, 892 F.2d at 817 ("A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'").

Significantly, in the records showing complaints of pain, Plaintiff did not distinguish between the arthritis and the bilateral impingement syndrome, and did not specify in which shoulder, right, left, or both, he had pain.[11] Although there is ample evidence that Plaintiff complained of pain, there is no medically determinable evidence that this bilateral shoulder impingement syndrome was the cause of his pain after the initial diagnosis during surgery on his shoulder. *Anthony*, 954 F.2d 295-96 ("At a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptom alleged."). Although Dr. Shad made the bilateral impingement diagnosis in 2013, the medical records since then do not support a determination that this syndrome was severe or continued to cause Plaintiff pain. Thus, Plaintiff has failed to establish the *de minimis* showing that his bilateral impingement syndrome was a severe impairment. *Id.* Because Plaintiff failed to show that his bilateral

---

[11] *Id.*

impingement syndrome was a severe impairment, the ALJ did not err in not finding it severe or failing to include limitations to account for this syndrome. *Id.*

### 3. *Substantial evidence supports the ALJ's decision to omit additional limitations for Plaintiff's left shoulder.*

At step two, the ALJ found that Plaintiff's degenerative arthritis of the right shoulder was a severe impairment, among others. R. 13. To account for the impairments, the RFC limited Plaintiff to light work, with certain limitations. R. 15. Specifically for the right shoulder, the ALJ included the limitations that Plaintiff can occasionally reach overhead, and frequently reach in all other directions, with his right upper extremity. R. 15. Plaintiff argues that the ALJ's failure to include additional limitations for Plaintiff's left shoulder was error. ECF No. 8 at 12.

The medical evidence establishes that Plaintiff's right shoulder had mild arthritis, but no such records exist for the left shoulder. For example, the ALJ noted that, a few years before the onset date, in 2013, medical records showed that Plaintiff's "[r]ight shoulder x-ray showed mild AC joint osteoarthritis." R. 17 (referencing R. 317–19). In the same medical record, Plaintiff's treating physician, Dr. Pankiewicz, observed that both shoulders had normal range of motion, despite the arthritis. R. 338. As noted above, the ALJ observed that Dr. Mikkilineni documented that Plaintiff's shoulder movements were not restricted, and his right shoulder showed only mild arthritis. R. 17 (referencing R. 490–94). The ALJ found

that Dr. Mikkilineni's opinion was consistent with the medical evidence of record and afforded it great weight. R. 17.

Following surgery in 2013, the record lacks evidence of further treatment for Plaintiff's left shoulder. The ALJ noted that Plaintiff had left rotator cuff surgery in December 2013, and healing progressed normally. R. 17. "The Post-operative treatment note in March 2014 demonstrated normal range of motion and 5/5 strength throughout." R. 17. The ALJ found that the objective medical evidence did not support the severity and intensity of Plaintiff's alleged loss of functioning. R. 16-17. The ALJ is the sole arbiter of the credibility of the witnesses. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). Without medically determinable evidence of an impairment,[12] the Plaintiff has failed to establish that the ALJ erred by not including additional limitations for his left shoulder. *Anthony*, 954 F.2d 295-96.

The ALJ found that the objective medical evidence supported additional limitations for the right shoulder, but no such evidence for the left shoulder existed. The record supports this assertion.

### 4. *Plaintiff failed to show that the arthritis in his right wrist and hand is a severe impairment.*

Plaintiff contends that the ALJ's failure to find his right wrist and hand

---

[12] A medically determinable impairment requires proof of medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1)(A).

arthritis was a severe impairment was error. Plaintiff's contention is without merit.

At step two, Plaintiff has the burden to prove that arthritis in his right wrist and hand is a medically determinable impairment. A medically determinable impairment requires proof of medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

Plaintiff's subjective complaints to physicians are the only evidence in the record supporting his claim of arthritis.[13] No medical opinion in the record diagnoses Plaintiff with arthritis in his right hand or wrist.[14] "Only 'acceptable medical sources' can establish the existence of a medically determinable impairment…." *Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir. 2009).

Because subjective complaints are insufficient to establish that the arthritis in his right wrist and hand is a medically determinable impairment,[15] Plaintiff failed to

---

[13] R. 36 (Plaintiff testifying at the hearing that "I can use my hand, but it doesn't take very long for it to go numb and tingling."); R. 491–93 (informing Dr. Mikkilneni of his five year history of burning pain in the right hand, creating a tingling and numbness intermittent with pain and itching); R. 483–87 (Dr. Costa noting Plaintiff's complaint of pain in his hand and arm).

[14] In, 2013, when Plaintiff alleges his arthritis began, Dr. Shah reported that following surgery, Plaintiff reported that he was experiencing pain and numbness in his right hand and wrist. R. 534. Dr. Shah diagnosed Plaintiff with acromioclavicular joint arthritis in both his left and right shoulders. R. 551–54. However, Dr. Shah did not diagnose arthritis in Plaintiff's wrist and hand.

[15] *Greenspan*, 38 F.3d at 236 (finding claimant did not establish medically determinable impairment when she offered no proof besides her subjective complaints).

establish that the ALJ erred when she failed to include this as a severe impairment. *Anthony*, 954 F.2d 295-96; *Foster*, 2011 WL 5509475, at *11.

### 5. *ALJ's omission of Plaintiff's fatigue as a severe impairment at step two is harmless error.*

#### a. *Plaintiff met the de minimis burden in demonstrating that his fatigue is a severe impairment.*

Plaintiff has shown that his fatigue is both medically determinable and a severe impairment for step two. In 2013, one treating physician diagnosed Plaintiff with fatigue.[16] Several treating physicians documented Plaintiff's complaints of fatigue.[17] From 2013 through 2016, the latest medical record on file, Plaintiff continued to cite fatigue as a constant concern. Thus, Plaintiff has shown that the impairment lasted from 2013 through 2016.[18] Because a severe limitation requires a

---

[16] R. 298, 326 (treating physician Dr. Winston diagnosing Plaintiff with fatigue in March 2013).

[17] R. 268 (treating physician Dr. Pankiewicz documenting Plaintiff's complaints of fatigue in January, 2013); R. 306 (treating APRN Danie Avila documenting Plaintiff's complaints of fatigue in April 2013); R. 313 (treating physician Dr. Zevaleta reporting Plaintiff's complaints of fatigue); R. 518 (treating physician Dr. Shah documenting Plaintiff's reports of fatigue in April 2014); R. 484 (examining physician Dr. Costa reporting Plaintiff "experience[es] fatigue and decreased energy…and an inability to focus or concentrate," in April 2016); R. 509 (examining physician Dr. Strutt reporting that Plaintiff was "feeling weak and fatigued" in September 2016).

[18] The ALJ noted that Plaintiff has not sought any treatment after 2016. R. at 17. Plaintiff states that he had no insurance and could not afford to go to the doctor. ECF No. 8 at 17. However, Plaintiff did not provide any evidence that would show he attempted to obtain but was unable to afford treatment. When a Plaintiff fails to seek medical treatment for a condition, the ALJ can interpret the failure to mean that the condition is not severe. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (finding Plaintiff's argument that he could not afford treatment did not preclude ALJ from relying on failure of Plaintiff to take medication for relief of claimed severe back pain); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (finding a condition to be disabling when a Plaintiff can find no way to obtain it and provides proof that no facilities are available to the indigent); *Hollins v. Astrue*, No. A-09-CA-645-SS, 2010 WL 2900230, at *10 (W.D. Tex. July 19,

showing of both a severe impairment and that it was continuous for at least twelve months Plaintiff has satisfied the durational requirement, that the impairment was continuous for twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff also reported in his function report that his fatigue was affecting his ability to work and his ability to concentrate.[19] Both medical agency consultants found Plaintiff to have moderate difficulties in his ability to maintain concentration, persistence, or pace.[20] Thus, Plaintiff has made a *de minimus* showing that his fatigue has affected his ability to work, and therefore qualifies as a severe impairment at step two. *Salmond*, 892 F.3d at 818 (explaining an impairment is severe when it affects claimant's ability to work).

> b. *Any error was harmless because the ALJ incorporated limitations for Plaintiff's fatigue in the RFC analysis.*

Plaintiff reported that his fatigue "affects [his] ability to remember and concentrate on tasks." R. 220. Although the ALJ did not determine that Plaintiff's

---

2010) (explaining that an ALJ may consider a Plaintiff's failure to seek medical treatment in the disability determination).

[19] In his function report, Plaintiff claimed that "[n]ot being able to sleep causes me to be very stressed and fatigued—which greatly reduced my activities," and was unable to work because of fatigue and "inability to sleep." R. 216, 222.

[20] In his mental RFC assessment, Dr. Richard Campa found Plaintiff has concentration issues and was moderately limited in his ability to maintain attention and concentration for extended periods. R. 77. Similarly, in his RFC assessment, Dr. Stephen Drake also found that Plaintiff had concentration issues causing him to have moderate difficulties in his ability to maintain attention and concentration for extended periods. R. 93.

fatigue was a severe impairment at step two, she included limitations for Plaintiff's fatigue in the RFC.

In assessing Plaintiff's mental impairments, the ALJ found Plaintiff had moderate restrictions in "understand[ing], remember[ing], or apply[ing] information," moderate restrictions "with regard to concentrat[ing], persist[ing], or maintain[ing] pace," and moderate restrictions as well "with regard to adapt[ing] or manag[ing] oneself." R. 14–15. In making the RFC assessment, the ALJ noted that Plaintiff has sleep disruption. R. 15. The ALJ also noted Dr. Costa's conclusion that Plaintiff had deficits in concentration and difficulty recalling "simple to complete directions." R. 18.

The RFC included limitations that Plaintiff "can remember and follow simple, but not detailed instructions" and "can perform the tasks assigned, but not always at production rate pace." R. 15. Accordingly, although the ALJ did not discuss Plaintiff's fatigue at step two, she incorporated in the RFC the limitations Plaintiff reported from his fatigue that she found were supported in the medical records. Therefore, the ALJ's step two error was harmless. *Herrera*, 406 F. App'x at 904.

### 6. *Substantial evidence supports ALJ's decision to omit additional mental limitations.*

Plaintiff argues that the ALJ erred because she failed to address his severe mental limitations that Dr. Strutt diagnosed. ECF NO. 8 at 5. Plaintiff's argument is without merit.

After examining Plaintiff in September 2016, Dr. Strutt diagnosed him with "severe major depressive disorder" and "unspecified anxiety disorder." R. 511, 514-16.[21] At step two, the ALJ found, consistent with Dr. Strutt's diagnosis, that Plaintiff had the severe impairments of anxiety, depression, and somatoform disorder. R. 13.

Contrary to Plaintiff's assertion, the ALJ reviewed Dr. Strutt's mental assessment report but assigned it little weight. R. 18. In the medical assessment, Dr. Strutt rated Plaintiff as poor in the following categories: relate to coworkers, deal with the public, deal with work stressors, function independently, behave in an emotionally acceptable manner, relate predicably in social situation, and demonstrate reliability. R. 514-16. The ALJ found that Dr. Strutt's opinion was "inconsistent with the medical evidence of record, and her own evaluation." R. 18. Specifically, Dr. Strutt's evaluation notes reported Plaintiff as having normal motivation, mental status, intellect, achievement, memory, language, executive functioning, and cognitive testing. R. 18 (referencing R. 509–10).[22] She also observed that Dr. Strutt's evaluation noted a possible over reporting of symptoms.

---

[21] In Dr. Strutt's report, Dr. Strutt observed that Plaintiff "endorsed a significant level of distress associated with somatization, obsessive-compulsive tendencies, interpersonal sensitivity; depression, anxiety, hostility, phobic anxiety, and bizarre ideation including paranoia." R. 514. Dr. Strutt concluded that Plaintiff's symptomology included symptoms of "depression, anxiety, and suicidal ideation." R. 516.

[22] Dr. Strutt observed how Plaintiff's examination was all within the normal limitations in comparison to age and education-matched peers. R. 511. Dr. Strutt also noted that Plaintiff denied symptoms of anxiety and reported mild symptoms of depression. R. 508. Further, Dr. Strutt observed the Plaintiff in the examination as presenting well, mood appearing neutral, and actively engaging in all presented tasks with motivation to perform. R. 510.

R. 18.

Despite these normal findings in her evaluation, in the medical assessment report, Dr. Strutt opined that Plaintiff could not "sustain continued gainful employment." R. 511. However, issues of disability—even from a treating source—can never be entitled to controlling weight. SSR 96-5p, 1996 WL 374183. Quite to the contrary, the disability determination is the sole province of the ALJ. SSR 96-5p, 1996 WL 374183.

As administrative factfinder, the ALJ is entitled to determine the credibility of medical experts and weigh their opinions. *Greenspan*, 38 F.3d at 237 (finding substantial evidence supported ALJ's decision to disregard treating physician's diagnosis). Agency guidelines require the ALJ to consider the consistency of any medical opinion with the medical record as a whole. 20 C.F.R. § 416.927(c)(4). When an opinion is not supported by the records as a whole, the ALJ is justified in giving it little or no weight. *Newton*, 209 F.3d at 454 (The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion."). Likewise, when an opinion is contrary to the doctor's own records, the ALJ is justified in discounting the opinion. *Qualls v. Astrue*, 339 F. App'x 461, 465 (5th Cir. 2009) (affirming when ALJ rejected physician's opinion because the record evidenced improvement despite doctor's opinion that Plaintiff was severely limited). The ALJ's assessment of Dr. Strutt's opinion regarding Plaintiff's mental

impairments is consistent with the record as a whole and supported by substantial evidence.[23] Therefore, substantial evidence supports the ALJ's decision not to include the mental limitations Dr. Strutt enumerated in the RFC.

## B. Substantial Evidence Supports the ALJ's Step Five Finding.

Plaintiff claims that the ALJ failed to address his restricted range of motion in both shoulders (not just the right shoulder), his reduced ability to use his right hand and wrist, his fatigue, and his mental impairments in the hypothetical questions to the vocational expert. ECF No. 8 at 21. Plaintiff claims that absent this error the vocational expert would have testified that no job existed that Plaintiff could perform. ECF No. 8 at 22. Defendant argues in response that substantial evidence supports the ALJ's step five finding. ECF No. 10 at 10-11.

An ALJ need only incorporate into the hypothetical questions those claimed disabilities the ALJ recognizes and finds supported. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (affirming ALJ's decision to omit questions concerning limitations the ALJ did not recognize). The hypothetical questions posed to the

---

[23] In contrast, the ALJ afforded moderate weight to Dr. Costa who similarly performed an assessment of Plaintiff's mental impairments and who diagnosed Plaintiff with unspecified anxiety disorder, unspecified depressive disorder, and somatic disorder. R. 18 (referencing R. 482–89). Specifically, the ALJ observed how in both examinations, Plaintiff engaged in eye contact and was cooperative, and performed overall in a normal range for the mental status examinations. R. 17–18. Dr. Costa found Plaintiff had deficits in remote, recent, and immediate memory and concentration as well as difficulty recalling simple to complete directions. R. 18. The ALJ found the record supported Dr. Costa's examination, which did not produce the extreme limitations compared to Dr. Strutt. On the other hand, the ALJ also afforded little weight to the opinions of both state agency consultants who found little limitation in Plaintiff's mental impairment, observing that Plaintiff possessed more limitations than the consultants afforded. R. 19.

vocational expert must be said to "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). In addition, Plaintiff and his representative must be afforded the opportunity "to correct deficiencies in the ALJ's questions." *Id.*

Contrary to Plaintiff's assertion, the hypothetical questions incorporated every limitation the ALJ found to be supported, including Plaintiff's fatigue[24] and mental impairments.[25] R. 57-60. Because the Plaintiff's bilateral shoulder impingement, left shoulder, and right hand and wrist arthritis were not medically determinable impairments, the ALJ was not required to include them in the hypothetical question. *Masterson*, 309 F.3d at 274 (affirming ALJ's decision to omit limitations not

---

[24] In her questioning, the ALJ asked the vocational expert, "And if you were also to assume that the individual could remember and follow simple but not detailed instructions; and could perform the tasks assigned but not always at a production rate pace, however, he could meet the end-of-day work goals; and could occasionally adapt to rapid changes in the workplace, would that impact the three jobs that you identified?" R. 59. To which the vocational expert responded, "Yes. Under that hypothetical he would be unable to perform those jobs," referring to the previous jobs identified. R. 60. However, the vocational expert then testified that under that hypothetical, there would be jobs at the light, unskilled work level that the Plaintiff could do. R. 60. These included shipping weigher, mail clerk, and office helper. R. 60.

[25] The ALJ's fourth hypothetical question to the vocational expert asked, "if you were also to assume that the individual could remember and follow simple but not detailed instructions; and could perform the tasks assigned but not always at a production rate pace, however he could meet the end-of-day work goals; and could occasionally adapt to rapid changes in the workplace, would that impact the three jobs that you identified?" to which the vocational expert responded "Yes, under that hypothetical he would be unable to perform those jobs." R. 59–60. The vocational expert then identified alternative jobs that exist in the economy that the hypothetical plaintiff could perform including shipping weigher, mail clerk, and office helper. R. 60. The ALJ next asked, "for my last hypothetical, please first assume the facts --- or assume that we would be looking at the light level of exertion, and assume all of my previous hypothetical abilities and limitations, but also assume that due to his impairments the individual would likely have good days and bad days that would result in him being absent from work two or more days per month. Would that impact the jobs you identified at the light level?" to which the ALJ responded "Yes it would." R. 60.

recognized by ALJ); *Roberts v. Colvin*, 946 F. Supp. 2d 646, 662 (S.D. Tex. 2013)

("ALJ is not required to incorporate limitations into hypothetical questions presented

to vocational expert in social security disability case, if ALJ did not find alleged

limitations to be supported in the record."). Moreover, the Plaintiff's attorney was

given the opportunity to ask additional questions regarding the omitted limitations.[26]

After the cross-examination, the ALJ asked follow-up questions incorporating

additional mental limitations.[27] Thus, Plaintiff's questions had the desired impact on

the ALJ, causing her to include additional mental limitations in the hypothetical,

even if not all the limitations Plaintiff wanted.

Accordingly, the ALJ's hypothetical questions to the vocational expert

included all the limitations supported by the record and are supported by substantial

---

[26] Plaintiff's attorney, when given the opportunity to examine the vocational expert, asked the following hypothetical question: "Mr. King, let's assume a profile of a particular individual, and we have poor as defined as ability to function in this area is almost absent…Relate to coworkers, poor; deal with the public, poor; deal with work stressors, poor; function independently, poor; behave in an emotionally acceptable manner, poor; relate predicably in social situation, poor; demonstrate reliability, poor. Would an individual with that profile be able to perform and maintain any kind of full-time competitive employment?" The vocational expert responded, "With those limitations under your definition of poor, no." R. 63.

[27] Following cross-examination, the ALJ asked the VE additional hypothetical questions concerning mental limitations. R. 64. "Some of the hypotheticals that I have asked, and you can assume the individual can occasionally balance, stoop, kneel, crouch, and crawl, which was one of the items that was removed from my alternative hypothetical, and then you would assume what's commonly called the mental limitations, the ability to remember and follow simple but not detailed instructions, to perform the tasks assigned but not always at a production rate pace, and meet the end-of-day goals, and could occasionally adapt to rapid changes in the workplace. If the individual were also able to have occasional contact with coworkers, supervisors, and the general public in addition to all of the other abilities and limitations that I previously identified, would the work as a shipping weigher, a mail clerk, and an office helper still be available at the light level?" to which the vocational expert testified "Yes, under that hypothetical it would judge."

evidence. *Rangel v. Astrue*, No. H-08-2246, 2009 WL 2971129, at *15 (S.D. Tex. Sept. 14, 2009) (affirming ALJ's finding of non-disabled when every supported limitation was included in the hypothetical questions); *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (affirming ALJ's step five finding when he relied on hypothetical questions that contained only those limitations he found credible).

## IV.    CONCLUSION

This Court OREDERS as follows: Plaintiff's motion for summary judgment, ECF NO. 8, is **DENIED**, and Defendant's motion for summary judgment, ECF No. 10, is **GRANTED.** The Commissioner's decision is **AFFIRMED.** This case is **DISMISSED WITH PREJUDICE.**

Signed at Houston, Texas, on June 28, 2021.


\_\_\_ *Dena Palermo*
**Dena Hanovice Palermo**
**United States Magistrate Judge**